# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ELIZALDO SAMPIAO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PATRICIA HYDE, New England | ) | |
| Field Office Director, U.S. Immigration | ) | |
| and Customs Enforcement; MICHAEL | ) | No. 1:25-cv-11981-JEK |
| KROL, Special Agent, Homeland Security | ) | |
| Investigations, U.S. Immigration and | ) | |
| Customs Enforcement; TODD LYONS, | ) | |
| Acting Director, U.S. Immigration and | ) | |
| Customs Enforcement; KRISTI NOEM, | ) | |
| U.S. Secretary of Homeland Security, | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM AND ORDER ON
## PETITION FOR A WRIT OF HABEAS CORPUS

**KOBICK, J.**

Petitioner Elizaldo Sampiao,[1] a citizen of Brazil, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 seeking an order of immediate release from detention. In October 2021, Sampiao was arrested and detained by U.S. Customs and Border Protection ("CBP") officers after crossing into the United States between ports of entry. CBP released Sampiao on an Order of Recognizance and then filed a Notice to Appear in the Chelmsford Immigration Court, thus

---

[1] While the petitioner and the respondents spell his last name "Sampiao" in this Court, *see* ECF 1; ECF 7-1, ¶ 4, all of the government documents submitted by the parties spell his last name "Sampaio," *see, e.g.*, ECF 2; ECF 14-1, at 1-6; ECF 18-1, at 2; ECF 26-1, at 1. The Court follows the parties' lead in this case by spelling his last name "Sampiao" throughout this opinion.

commencing removal proceedings against him under 8 U.S.C. § 1229a. For over three years, Sampiao abided by the conditions in the Order of Recognizance and resided in the United States.

On July 11, 2025, while attending a routine check-in at a U.S. Immigration and Customs Enforcement ("ICE") office, Sampiao was arrested pursuant to a warrant and detained under 8 U.S.C. § 1226. Section 1226(a) establishes a discretionary detention framework for noncitizens who are "arrested and detained" "[o]n a warrant issued by the Attorney General." Noncitizens detained under Section 1226(a) have the right to request a bond hearing before an Immigration Judge, at which the government bears the burden to prove that continued detention is justified. After Sampiao requested a bond hearing, however, the government claimed that he is ineligible for bond because he is detained under 8 U.S.C. § 1225(b)(2)(A). In contrast with Section 1226(a)'s discretionary detention scheme, Section 1225(b)(2)(A) mandates detention if an immigration officer determines that a noncitizen seeking admission to the United States "is not clearly and beyond a doubt entitled to be admitted."[2] At the bond hearing on July 31, 2025, the Immigration Judge concluded that Sampiao is detained under Section 1226(a) and ordered him released from custody on a $3,500 bond. The next day, ICE filed a notice of intent to appeal that decision to the Board of Immigration Appeals ("BIA"). ICE then timely appealed the bond decision. Pursuant to 8 C.F.R. § 1003.19(i)(2), ICE's appeal had the effect of automatically staying the Immigration Judge's decision, along with Sampiao's release from detention, for at least 90 days from ICE's notice of appeal. Sampiao remains detained at the Plymouth County Correctional Facility due to this automatic stay regulation.

In support of his petition for a writ of habeas corpus, Sampiao initially contended that he is not lawfully detained under Section 1225(b)(2) and requested that the Court order his immediate

---

[2] The terms "noncitizen" and "alien" are used interchangeably throughout this decision.

release. The government responded that although Sampiao is in removal proceedings and was arrested on a warrant citing Section 1226, Sampiao is, and has always been, subject to mandatory detention under Section 1225(b)(2). For the reasons stated in *Gomes v. Hyde*, No. 25-cv-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025) and *dos Santos v. Noem*, No. 25-cv-12052- JEK, 2025 WL 2370988 (D. Mass. Aug. 14, 2025), the Court disagrees. Because Sampiao was arrested on a warrant under Section 1226, his detention continues to be governed by Section 1226(a)'s discretionary framework.

Nevertheless, in light of ICE's appeal of the Immigration Judge's decision ordering Sampiao released on bond, Sampiao is now detained through at least November 2025 pursuant to the automatic stay provisions of 8 C.F.R. § 1003.19(i)(2). In supplemental briefing, Sampiao contends that, as applied to him, this automatic stay regulation is *ultra vires* and deprives him of his procedural and substantive due process rights, in violation of the Fifth Amendment. As a noncitizen who has long resided in the United States and is subject to Section 1226(a)'s discretionary detention scheme, Sampiao is entitled to full due process protections. Applying the three-part balancing test articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Court concludes that the application of the automatic stay regulation in this case violates Sampiao's procedural due process rights. The Court will, accordingly, grant his habeas petition and order that he be released from detention, subject to the Immigration Judge's July 31, 2025 bond order.

## BACKGROUND

### I.    <u>Statutory and Regulatory Framework.</u>

A.    <u>Sections 1225(b) and 1226.</u>

Two statutes principally govern the detention of noncitizens pending removal proceedings: 8 U.S.C. §§ 1225 and 1226. Section 1225 applies to "applicants for admission," who are, as

relevant here, noncitizens "present in the United States who [have] not been admitted." 8 U.S.C. § 1225(a)(1). All applicants for admission must be inspected by an immigration officer. *Id.* § 1225(a)(3). Certain applicants for admission are then subject to expedited removal proceedings. *See id.* § 1225(b)(1); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108-09 (2020). In other cases, if the examining immigration officer determines that an applicant for admission is not "clearly and beyond a doubt entitled to be admitted," Section 1225(b)(2) provides that the applicant for admission "shall be detained for" standard removal proceedings. 8 U.S.C. § 1225(b)(2)(A); *see Jennings v. Rodriguez*, 583 U.S. 281, 287-88 (2018).[3] A noncitizen detained under Section 1225(b)(2) may be released only if he is paroled "for urgent humanitarian reasons or significant public benefit" under 8 U.S.C. § 1182(d)(5)(A). *See Jennings*, 583 U.S. at 300 ("That express exception to detention implies that there are no *other* circumstances under which aliens detained under § 1225(b) may be released.").

Whereas Section 1225(b) "authorizes the Government to detain certain aliens *seeking admission into the country*," Section 1226 "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *Id.* at 289 (emphases added). Section 1226(a) establishes a discretionary detention framework for noncitizens arrested and detained "[o]n a warrant issued by the Attorney General." For such individuals, the Attorney General (1) "may continue to detain the arrested alien," (2) "may release the alien on . . . bond of at least $1,500," or (3) "may release the alien on . . . conditional parole." 8 U.S.C. §§ 1226(a)(1)-(2). The arresting immigration officer makes an initial custody determination, but noncitizens have

---

[3] Standard removal proceedings are governed by 8 U.S.C. § 1229a, and they involve "an evidentiary hearing before an immigration judge" at which the noncitizen "may attempt to show that he or she should not be removed." *Thuraissigiam*, 591 U.S. at 108. These proceedings commence when a charging document, called a Notice to Appear, is filed in Immigration Court. 8 C.F.R. § 1003.14(a); *see* 8 U.S.C. § 1229a.

the right to request a custody redetermination (i.e., bond) hearing before an Immigration Judge. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). Bond may be denied only if the government "either (1) prove[s] by clear and convincing evidence that [the noncitizen] poses a danger to the community or (2) prove[s] by a preponderance of the evidence that [the noncitizen] poses a flight risk." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021).

In addition to bond, the government may release a noncitizen detained under Section 1226(a) on an Order of Recognizance, which is a form of conditional parole. *See* 8 U.S.C. § 1226(a)(2)(B); *Matter of Cabrera-Fernandez*, 28 I. & N. Dec. 747, 747 (B.I.A. 2023) ("The respondents were . . . released on their own recognizance pursuant to [the Department of Homeland Security's] conditional parole authority under . . . 8 U.S.C. § 1226(a)(2)(B)[.]"); *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the [government] used the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a)."); *Cruz-Miguel v. Holder*, 650 F.3d 189, 191 (2d Cir. 2011) (similar).

Section 1226(c) is the sole exception to Section 1226(a)'s discretionary detention framework. *See* 8 U.S.C. § 1226(a) ("Except as provided in subsection (c) . . . , the Attorney General . . . may . . ."); *id.* § 1226(c)(1) ("The Attorney General *shall* take into custody any alien who . . ." (emphasis added)). Until recently, Section 1226(c) required the detention of noncitizens who are inadmissible or deportable because they have committed or been sentenced for certain criminal offenses, or because they are affiliated with terrorist groups or activities. *See id.* §§ 1226(c)(1)(A)-(D). Through the Laken Riley Act, enacted in January 2025, Congress expanded Section 1226(c)'s mandatory detention requirement to a new category of noncitizens, but only where two criteria are met. *See* Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025) (adding 8 U.S.C. § 1226(c)(1)(E)). Under Section 1226(c)(1)(E), the Attorney General must also detain a noncitizen

if he (i) is inadmissible because he is present in the United States without being admitted or paroled, 8 U.S.C. § 1182(a)(6)(A), obtained documents or admission through misrepresentation or fraud, *id.* § 1182(a)(6)(C), or lacks valid documentation, *id.* § 1182(a)(7); and (ii) "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person," *id.* §§ 1226(c)(1)(E)(i)-(ii).

 B. <u>Automatic Stay Regulation.</u>

 Federal regulations provide a dissatisfied party the right to appeal an Immigration Judge's decision in a custody redetermination hearing to the BIA. 8 C.F.R. §§ 1003.19(f), 1003.38. When, as here, an Immigration Judge has ordered a noncitizen released on bond and the government wishes to appeal that decision to the BIA, one regulation—8 C.F.R. § 1003.19(i)(2)—permits ongoing detention of the noncitizen pending appeal. This regulation, known as the "automatic stay regulation," provides, in pertinent part, that if the government "determine[s] that an alien should not be released . . . , any order of the immigration judge authorizing release (on bond or otherwise) shall be stayed upon [the government's] filing of a notice of intent to appeal the custody redetermination . . . with the immigration court within one business day of the order." *Id.* § 1003.19(i)(2). The stay lapses if the government "fails to file a notice of appeal with the [BIA] within ten business days of the issuance of the order of the immigration judge" and "a certification by a senior legal official" in the U.S. Department of Homeland Security ("DHS") regarding the approval of, and basis for, appeal. *Id.* § 1003.6(c)(1).

 If the government files a timely notice of appeal, the automatic stay regulation further provides that "any order of the immigration judge authorizing release (on bond or otherwise)"

shall, "except as otherwise provided in 8 CFR 1003.6(c), . . . remain in abeyance pending decision of the appeal by the [BIA]." *Id.* § 1003.19(i)(2). Under Section 1003.6(c)(4), in turn, the automatic stay will "lapse 90 days after the filing of the notice of appeal," absent a BIA decision. *Id.* § 1003.6(c)(4). The government can extend the noncitizen's detention, however, by requesting "a discretionary stay" from the BIA, which has the consequence of extending the automatic stay for an additional 30 days if the BIA fails to rule on the discretionary stay request. *Id.* § 1003.6(c)(5). Further, if the BIA "authorizes an alien's release (on bond or otherwise), denies a motion for discretionary stay, or fails to act on such a motion before the automatic stay period expires, the alien's release shall be automatically stayed for [an additional] five business days," or for fifteen business days if the Department of Homeland Security refers the case to the Attorney General within those five business days. *Id.* § 1003.6(d). The Attorney General can then "order a discretionary stay pending the disposition of any custody case." *Id.*

## II.    **Factual Background.**

Sampiao is a native and citizen of Brazil. ECF 1, ¶¶ 1, 6; ECF 7-1, ¶ 6. On October 21, 2021, he entered the United States, encountered CBP officers at the southern border near Yuma, Arizona, and was arrested and detained by those officers. ECF 1, ¶ 1; ECF 7-1, ¶¶ 7-8. The next day, the officers executed a warrant for his arrest stating that he had been "taken into custody as authorized by section 236 of the Immigration and Nationality Act"—i.e., pursuant to 8 U.S.C. § 1226. ECF 2; *see* ECF 1, ¶ 12. The officers also issued Sampiao a Notice to Appear, charging him with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i). ECF 7-1, ¶ 9.[4] Four days later, on October 26, 2021, CBP released Sampiao on an Order of Recognizance pursuant to 8 U.S.C.

---

[4] Section 1182(a)(6)(A)(i) reads in full: "An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible." 8 U.S.C. § 1182(a)(6)(A)(i).

§ 1226. *See id.* ¶ 10.[5] On December 22, 2021, ICE filed the Notice to Appear in the Chelmsford Immigration Court, which commenced standard removal proceedings against Sampiao under 8 U.S.C. § 1229a. *Id.* ¶ 9; *see* ECF 19-1; ECF 1, ¶¶ 1, 13; *Thuraissigiam*, 591 U.S. at 108.

Following his release from custody in October 2021, Sampiao filed an application for asylum. ECF 14, at 11; ECF 14-1, at 4; ECF 1, ¶¶ 1, 6. He was also enrolled in ICE's "Alternatives to Detention – Intensive Supervision Appearance Program." ECF 1, ¶ 1.[6] Sampiao was required to attend scheduled check-ins with ICE as part of his participation in the program. *See id.*; ICE, *Alternatives to Detention*, *supra* note 6. On July 11, 2025, ICE officers detained Sampiao after he appeared for one such check-in at an ICE office in Burlington, Massachusetts. *See* ECF 1, ¶ 1; ECF 7-1, ¶ 11.[7] That same day, ICE also revoked the Order of Recognizance from October 2021 and issued Sampiao a warrant for his arrest, which, like the warrant CBP previously obtained, stated that it was issued under 8 U.S.C. § 1226. *See* ECF 7-1, ¶ 11; ECF 18-1; ECF 2.[8] The government does not allege that Sampiao ever violated any of the conditions imposed when he

---

[5] ICE's sample Order of Recognizance states that it is issued "[i]n accordance with section 236 of the Immigration and Nationality Act"—that is, 8 U.S.C. § 1226. ICE, *Order of Release on Recognizance*, at 1, https://www.ice.gov/doclib/detention/checkin/I_220A_OREC.pdf [https://perma.cc/8VY5-89TA].

[6] Created in 2004, this program "exists to ensure compliance with release conditions and provides important case management services for non-detained aliens." ICE, *Alternatives to Detention*, https://www.ice.gov/features/atd [https://perma.cc/2DAJ-J7RV].

[7] In his declaration, ICE Assistant Field Office Director Keith Chan asserts that "ICE detained [Sampiao] . . . pursuant to its authority under 8 U.S.C. § 1225(b)(2)." ECF 7-1, ¶ 11. The Court does not credit this assertion, which is in the nature of a legal conclusion, not a fact, and in any event is contradicted by the arrest warrant, which invokes Section 1226. *See* ECF 18-1.

[8] Sampiao's arrest warrant and ICE's sample Warrant for Arrest of Alien both provide that they are "authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act"— i.e., 8 U.S.C. §§ 1226 and 1357. *See* ECF 18-1; ICE, *Warrant for Arrest of Alien*, https://www.ice.gov/sites/default/files/documents/Document/2017/I-200_SAMPLE.PDF [https://perma.cc/C6TB-K8KE].

was released on his own recognizance in October 2021 or any of the terms of his participation in the Intensive Supervision Appearance Program. *See generally* ECF 7.

Sampiao is currently detained at the Plymouth County Correctional Facility in Plymouth, Massachusetts. ECF 7-1, ¶¶ 12-13. On July 11, 2025, Sampiao filed a petition for habeas corpus pursuant to 28 U.S.C. § 2241 in this Court. ECF 1. The petition alleges that his detention is unlawful and violates the Due Process Clause of the Fifth Amendment. *Id.* ¶ 16. Sampiao named as defendants the following individuals in their official capacities: Patricia Hyde, the New England Field Office Director for ICE; Michael Krol, the New England Special Agent in Charge for Homeland Security Investigations for ICE; Todd Lyons, the Acting Director for ICE; and Kristi Noem, the Secretary of Homeland Security. *Id.* ¶¶ 7-11. The government responded to Sampiao's petition on July 18, 2025, and, after receiving two extensions of time, Sampiao filed a reply brief on August 1, 2025. ECF 7, 11, 13, 14.

Separately, on July 23, 2025, Sampiao requested a custody redetermination hearing pursuant to 8 C.F.R. § 1236. *See* ECF 19-1. The Chelmsford Immigration Court held that hearing on July 31, 2025 and ordered Sampiao released from custody on a $3,500 bond that same day. ECF 14-1, at 1-2, 6. The Immigration Judge first determined that the Immigration Court had jurisdiction to consider Sampiao's request for custody redetermination because he is detained pursuant to Section 1226(a), and not, as the government argued, pursuant to Section 1225(b)(2). ECF 26-1, at 3-4. The Judge then concluded that the government did not demonstrate by clear and convincing evidence that Sampiao poses a danger to the community. *Id.* at 4-5. Turning to whether Sampiao poses a risk of flight, the Judge considered several factors. *Id.* at 2-3, 5. On the one hand, the Judge explained, Sampiao has a lengthy residence in the United States, a child who is a U.S. citizen, family ties to the U.S., a fixed U.S. address, and no criminal record. *Id.* at 5. Sampiao also

submitted several letters attesting to his character and has a pending asylum application. *Id.* On the other hand, the Judge noted, Sampiao's asylum application is incomplete, he is present in the U.S. unlawfully, and any relief from removal is still speculative. *Id.* On balance, the Immigration Judge concluded that the government met its burden to show by a preponderance of the evidence that Sampiao poses a risk of flight and determined that bond in the amount of $3,500 would mitigate that risk. *Id.* In accordance with 8 C.F.R. §§ 1003.6(c)(1) and 1003.19(i)(2), the Immigration Judge's decision was automatically stayed for ten business days when ICE filed a notice of its intent to appeal the bond order on August 1, 2025. ECF 14-1, at 3-4.

Meanwhile, after receiving the government's response to Sampiao's habeas petition and his reply, this Court held a hearing and took the petition under advisement on August 5, 2025. ECF 17. ICE formally appealed the Immigration Judge's bond decision to the BIA on August 14, 2025. ECF 24-1; ECF 20-1; *see* 8 C.F.R. § 1003.6(c)(1).[9] Between August 1, 2025 and August 14, 2025, Sampiao remained detained in ICE custody pursuant to the automatic stay regulation. 8 C.F.R. §§ 1003.19(i)(2), 1003.6(c)(1). Once ICE filed its notice of appeal to the BIA on August 14, 2025, Sampiao's 90-day period of further detention commenced, likewise pursuant to the automatic stay regulation. *Id.* §§ 1003.19(i)(2), 1003.6(c)(4).

After learning that ICE had filed its notice of appeal, this Court ordered the parties to address, among other issues, how that appeal affects Sampiao's habeas petition. ECF 21. Sampiao and the government filed separate responses on August 25, 2025. ECF 22, 24. The government takes the position that the automatic stay pursuant to 8 C.F.R. §§ 1003.19(i)(2) and 1003.6(c)(4) is constitutional and will, absent any extension authorized by the regulations, remain in effect for

---

[9] The parties agree that ICE's notice of appeal satisfies the requirements of 8 C.F.R. § 1003.6(c)(1). ECF 22, at 2; ECF 24, at 1.

90 days—that is, until November 12, 2025—pending BIA review. *See* ECF 22. Sampiao contends that the automatic stay provision is *ultra vires* and violates his procedural and substantive due process rights under the Fifth Amendment. *See* ECF 24.

## DISCUSSION

### I. <u>Exhaustion of Administrative Remedies.</u>

This Court has jurisdiction to review habeas petitions filed by immigration detainees who assert that they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The government does not contest this Court's jurisdiction, but it contends that Sampiao's challenge to his detention is premature because its appeal of the Immigration Judge's order granting Sampiao bond is pending before the BIA.[10]

Since exhaustion, as the government recognizes, is not required by statute in this context, its exhaustion argument is measured against the "more permissive" common-law, rather than statutory, exhaustion standard, which "'cedes discretion to a [federal] court to decline the exercise of jurisdiction.'" *Brito v. Garland*, 22 F.4th 240, 255-56 (1st Cir. 2021) (quoting *Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 174 (1st Cir. 2016)); *see* ECF 7, at 6. While the exhaustion doctrine often "'serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency,'" there are "'circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion.'" *Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, 77 (1st Cir. 1997) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145-46

---

[10] The government also contends that Sampiao has failed to exhaust his administrative remedies because he has not yet requested humanitarian parole under 8 U.S.C. § 1182(d)(5). *See* ECF 7, at 10. But that parole authority applies only to noncitizens who are "applying for admission to the United States," 8 U.S.C. § 1182(d)(5)(A), and are detained under 8 U.S.C. § 1225(b), *see Jennings*, 583 U.S. at 300. Because, as will be explained, Sampiao is detained under Section 1226(a), not Section 1225(b), he is ineligible for parole under 8 U.S.C. § 1182(d)(5)(A) and need not request parole under that statute to exhaust administrative remedies.

(1992)). As relevant here, "a court may consider relaxing the [exhaustion requirement] when unreasonable or indefinite delay threatens unduly to prejudice the subsequent bringing of a judicial action." *Id.* "And, relatedly, if the situation is such that 'a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim,' exhaustion may be excused even though 'the administrative decisionmaking schedule is otherwise reasonable and definite.'" *Id.* (quoting *McCarthy*, 503 U.S. at 147). Irreparable harm may be established where a petitioner will be incarcerated or detained pending the exhaustion of administrative remedies. *See Brito*, 22 F.4th at 256 ("'[E]xhaustion might not be required if [the petitioner] were challenging her incarceration . . . or the ongoing deprivation of some other liberty interest.'" (quoting *Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986))).

Waiver of the exhaustion requirement is warranted here because Sampiao is likely to experience irreparable harm if he is unable to seek habeas relief until the BIA decides ICE's appeal of the Immigration Judge's order granting his release on bond. According to data released by the Executive Office for Immigration Review, the average processing time for bond appeals exceeded 200 days in 2024. *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1248 (W.D. Wash. 2025). Because Sampiao is detained pursuant to the automatic stay regulation, the BIA is required to "track the progress" of his appeal "in order to avoid unnecessary delays in completing the record for decision." 8 C.F.R. § 1003.6(c)(3). But even if this tracking requirement is meant to encourage speedier processing of ICE's appeal, it does not require the BIA to decide the appeal more promptly than any other appeal. To the contrary, the regulations allow for extending Sampiao's detention beyond the 90-day period set by 8 C.F.R. § 1003.6(c)(4). *See* 8 C.F.R. §§ 1003.6(c)(4), (c)(5), (d). If the BIA were to act promptly, it would be unlikely to decide Sampiao's appeal before mid-November 2025, and if it processes the appeal at the same rate as last year's appeals, the

appeal may not be resolved until the spring of 2026. In any universe, then, Sampiao is likely to endure several additional months of detention that may be unlawful. Such a prolonged loss of liberty would, in these circumstances, constitute irreparable harm. *See Bois*, 801 F.2d at 468.

Many of the policy concerns animating the common-law exhaustion requirement are, moreover, absent here. An Immigration Judge has already considered and granted Sampiao's bond request, and the underlying factual record is straightforward. *See* ECF 26-1; *cf. McCarthy*, 503 U.S. at 145 (exhaustion requirement promotes judicial efficiency by creating "a useful record for subsequent judicial consideration, especially in a complex or technical factual context"). In these circumstances, where Sampiao's liberty interests "'weigh heavily against requiring administrative exhaustion,'" waiver of exhaustion is warranted. *Portela-Gonzalez*, 109 F.3d at 77 (quoting *McCarthy*, 503 U.S. at 146); *see Gomes*, 2025 WL 1869299, at *5 (waiving common-law exhaustion in similar circumstances); *dos Santos*, 2025 WL 2370988, at *5-6 (similar); *Rodriguez*, 779 F. Supp. 3d at 1253-54 (collecting cases).

## II.    Whether Sampiao Was Detained Under Section 1226(a) or Section 1225(b)(2)(A).

The initial question posed by Sampiao's habeas petition is whether he was detained in July 2025 under Section 1225(b)(2), as the government now contends, or was instead subject to discretionary detention under Section 1226(a), as the government represented in its warrants for his arrest. Section 1226(a) "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings," *Jennings*, 583 U.S. at 289, and it applies when a noncitizen is "arrested and detained" "[o]n a warrant issued by the Attorney General," 8 U.S.C. § 1226(a). That is precisely what occurred here. In October 2021, CBP officers arrested Sampiao on a warrant issued pursuant to 8 U.S.C. § 1226 and then released him on an Order of Recognizance under that same statute. *See* ECF 2; ECF 1, ¶ 12; ECF 7-1, ¶ 10. Nearly four years

later, in July 2025, ICE revoked that Order and executed another warrant for his arrest that similarly invoked 8 U.S.C. § 1226. *See* ECF 7-1, ¶ 11; ECF 18-1. Sampiao thus argues that because he was arrested and detained pursuant to Section 1226, his detention continues to be governed by Section 1226(a)'s discretionary framework.

The government disagrees, contending that Sampiao's current detention is governed by Section 1225(b)(2). That statute "authorizes the Government to detain certain aliens seeking admission into the country." *Jennings*, 583 U.S. at 289. If an immigration officer "determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted," Section 1225(b)(2) requires that the noncitizen be detained for removal proceedings under Section 1229a. 8 U.S.C. § 1225(b)(2)(A). It is undisputed that, when he was inspected by a CBP officer on October 21, 2021, Sampiao was an applicant for admission who failed to demonstrate that he was entitled to be admitted. *See* ECF 7-1, ¶ 7. But shortly thereafter, Sampiao was detained pursuant to a warrant issued under Section 1226(a), released on an Order of Recognizance pursuant to Section 1226(a), and served with a Notice to Appear, thus commencing standard removal proceedings under Section 1229a. *See id.* ¶¶ 9-10; *Thuraissigiam*, 591 U.S. at 108. And when Sampiao was arrested by ICE in July 2025, it was again on the authority of a warrant issued under Section 1226 rather than Section 1225(b)(2). *See* ECF 18-1. Thus, the question is whether Section 1225(b)(2) mandates the detention of a noncitizen, like Sampiao, who has been released into the United States and then arrested pursuant to Section 1226, is in the midst of standard removal proceedings, and is otherwise subject to Section 1226(a)'s discretionary detention framework.

For the reasons explained by this Court in *Gomes v. Hyde*, the answer to that question is no. *See* 2025 WL 1869299, at *5-8; *see also dos Santos*, 2025 WL 2370988, at *6-8. The plain text of Section 1226(a)—which provides that, following a noncitizen's arrest on a "warrant," the

Attorney General "may" detain the noncitizen, "may" release him on bond, or "may" release him on conditional parole, 8 U.S.C. §§ 1226(a)(1)-(2)—indicates Congress's intent to establish a discretionary, rather than mandatory, detention framework for noncitizens arrested on a warrant. *See Jennings*, 583 U.S. at 300 ("'the word "may" . . . implies discretion,'" whereas "'the word "shall" usually connotes a requirement'" (quoting *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016))). And while Section 1226(a) expressly carves out certain "criminal" noncitizens from its discretionary framework, it does not similarly carve out noncitizens who would be subject to mandatory detention under Section 1225(b)(2). *See* 8 U.S.C. § 1226(a) ("*Except as provided in subsection (c)* . . . , the Attorney General . . . *may* . . . ." (emphases added)). "That express exception" to Section 1226(a)'s discretionary framework "implies that there are no *other* circumstances under which" detention is mandated for noncitizens, like Sampiao, who are subject to Section 1226(a). *Jennings*, 583 U.S. at 300 (citing A. Scalia & B. Garner, Reading Law 107 (2012)). Interpreting Section 1225(b)(2) to mandate Sampiao's detention in these circumstances would contravene Congress's intent that Section 1226(a)'s discretionary detention framework apply to all noncitizens arrested on a warrant except those subject to Section 1226(c)'s carve out. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010) ("that Congress has created specific exceptions" to the applicability of a statute or rule "proves" that the statute or rule generally applies absent those exceptions).

The government's interpretation of Section 1225(b)(2) would also render a provision of Section 1226(c)(1)(E)—which was added to Section 1226 in 2025 by the Laken Riley Act—superfluous. Under Section 1226(c)(1)(E), a noncitizen is subject to mandatory detention if he (i) is inadmissible because he is present in the United States without being admitted or paroled, 8 U.S.C. § 1182(a)(6)(A), lacks requisite documentation, *id.* § 1182(a)(7), or sought to fraudulently

obtain requisite documentation or admission, *id.* § 1182(a)(6)(C) (the "inadmissibility criterion"); "*and*" (ii) is charged with, arrested for, convicted of, or admits to committing certain crimes (the "criminal conduct criterion"). 8 U.S.C. §§ 1226(c)(1)(E)(i)-(ii) (emphasis added). Thus, a noncitizen arrested on a warrant is subject to mandatory detention only where *both* the inadmissibility criterion and the criminal conduct criterion are satisfied.

Interpreting Section 1225(b)(2) to apply to noncitizens who are arrested on a warrant while residing in the United States, as the government does, would render Section 1226(c)(1)(E)'s criminal conduct criterion superfluous for noncitizens who are inadmissible because they are present in the United States without being admitted or paroled. *See* 8 U.S.C. § 1182(a)(6)(A). Such noncitizens are, of course, unlikely to prove to an examining immigration officer that they are "clearly and beyond a doubt entitled to be admitted." *Id.* § 1125(b)(2)(A). This is the case with Sampiao: he has been charged with inadmissibility under Section 1182(a)(6)(A). ECF 26-1, at 1. If the government were correct that such noncitizens are subject to mandatory detention under Section 1225(b)(2) as applicants for admission, there would have been no need for Congress to specify in Section 1226(c)(1)(E) that such citizens are subject to mandatory detention when they are present in the United States without being admitted or paroled *and* when they satisfy the separate criminal conduct criterion. Such an interpretation, which would nullify the criminal conduct provision of a statute Congress enacted this very year, must be rejected. *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."). The Court therefore concludes that the plain text of Sections 1225 and 1226, together with the structure of the larger statutory scheme, indicates that Section 1225(b)(2) does not apply to noncitizens who are arrested on a warrant issued by the Attorney General while residing in the United States. *See*

*Jennings*, 583 U.S. at 302-03 (Section "1226 applies to aliens already present in the United States" and "authorizes detention only '[o]n a warrant issued' by the Attorney General leading to the alien's arrest" (quoting 8 U.S.C. § 1226(a))).

The government resists this conclusion, arguing that "[t]o the extent 8 U.S.C. §§ 1225 and 1226 are in conflict, the 'specific provision' governs over the 'general one.'" ECF 7, at 4 (citing *Edmond v. United States*, 520 U.S. 651, 657 (1997)). In the government's view, Section 1225(b)(2), which applies only to applicants for admission, is a "specific" provision compared to Section 1226, which it describes as "the 'default' detention authority." *Id.* at 4-5 (quoting *Jennings*, 583 U.S. at 288). This argument is premised on a mischaracterization of the Supreme Court's opinion in *Jennings*. *Jennings* did not, as the government suggests, describe Section 1226 as the "default" detention authority in federal immigration law writ large. *See* 583 U.S. at 288-89. It instead explained that in circumstances where Section 1226 applies, "Section 1226(a) sets out the default rule"—that is, discretionary detention—to which Section 1226(c)'s mandatory detention requirement is the exception. *Id.* Section 1225(b)(2) is not "more specific" than Section 1226(a); these provisions simply apply in different circumstances. Section 1225(b)(2) governs the detention of applicants for admission who are "seeking admission" to the United States, whereas Section 1226(a) governs the detention of noncitizens who are arrested "[o]n a warrant" while present in the United States. 8 U.S.C. §§ 1225(b)(2)(A), 1226(a); *see Jennings*, 583 U.S. at 289, 302-03. Because Sampiao was arrested on a warrant while residing in the United States, he is subject to Section 1226(a)'s discretionary detention framework.[11]

---

[11] For all of the reasons explained in *Gomes*, the BIA's decision in *Matter of Q. Li*, 29 I. & N. Dec. 66 (B.I.A. 2025), does not support the government's argument here. *See* 2025 WL 1869299, at *7-8 & n.9. The government does not rely on the BIA's more recent decision in *Matter of Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025). But to the extent the BIA's analysis of Sections 1225 and 1226 in *Hurtado* is inconsistent with this Court's analysis here, the Court disagrees with the

III.    **Lawfulness of Sampiao's Current Detention Under the Automatic Stay Regulation.**

The Court's conclusion that Sampiao is detained under Section 1226(a) rather than Section 1225(b)(2)(A) aligns with the Immigration Judge's conclusion that Section 1226(a) governs his detention. *See* ECF 26-1, at 3-4. Nevertheless, and notwithstanding the Immigration Judge's order releasing him on bond, Sampiao remains in ICE custody pursuant to the automatic stay regulation. Sampiao contends that his ongoing detention under that regulation abridges his procedural and substantive due process rights, and that the regulation exceeds statutory authority delegated by Congress. The government responds that its application of the automatic stay regulation to Sampiao is lawful and precludes his release for at least ninety additional days, pending BIA review of the Immigration Judge's bond order.

The Court begins with first principles. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). While certain constitutional protections do not extend outside the "geographic borders" of the United States, "legal circumstances change" as soon as a noncitizen "enters the country." *Id.*; *see also A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1367 (2025) ("'[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.'" (quoting *Trump v. J.G.G.*, 145 S. Ct. 1003, 1006 (2025) (*per curiam*))); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("[O]nce passed through our gates, even illegally," noncitizens "may be expelled only after

---

BIA for the reasons given herein. The Supreme Court has made clear that "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority," and indeed "may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). The text of Sections 1225 and 1226, together with binding Supreme Court precedent interpreting those provisions and the repeated representations of the government in Sampiao's own case, confirm that Sampiao is subject to Section 1226(a)'s discretionary detention scheme.

proceedings conforming to traditional standards of fairness encompassed in due process of law."). The government is therefore wrong to argue that Sampiao is entitled to "only those rights provided by statute and regulations thereunder." ECF 22, at 5 (quotation marks omitted). The Supreme Court has made clear that an "applicant for admission" under Section 1225 who is "seeking initial entry" into the country "has only those rights regarding admission that Congress has provided by statute." *Thuraissigiam*, 591 U.S. at 139-40. But Sampiao is not, as discussed, an applicant for admission detained under Section 1225(b)(2)(A), nor is he "seeking initial entry" into the United States. *Id.* He has resided in the United States since October 2021, he is in the midst of removal proceedings, and he is subject to Section 1226(a)'s discretionary detention framework. He is, accordingly, entitled to the full procedural safeguards of the Due Process Clause of the Fifth Amendment.[12]

The next question is whether Sampiao's present detention pursuant to the automatic stay regulation, 8 C.F.R. § 1003.19(i)(2), comports with those procedural safeguards. To determine whether a form of civil detention violates a detainee's due process rights under the Fifth Amendment, courts apply the three-part balancing test articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Hernandez-Lara*, 10 F.4th at 27-28 (analyzing procedural due process challenge to the detention of noncitizen held pursuant to Section 1226(a) using the *Mathews* test).

---

[12] As the government points out, the Supreme Court said in *Thuraissigiam* that "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" 591 U.S. at 139 (quoting *Mezei*, 345 U.S. at 215). This statement has no bearing on Sampiao, who was not paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A), which is the sole basis for releasing an applicant for admission under Section 1225(b) into the United States. *See Jennings*, 583 U.S. at 300. Rather, Sampiao was arrested on a warrant citing Section 1226(a), released on an Order of Recognizance issued under Section 1226(a), and then arrested again on another warrant citing Section 1226(a). Because he has been subject to Section 1226(a)'s discretionary detention framework since 2021, he is not treated for due process purposes as if he were stopped at the border. He is, instead, entitled to full due process protections. *See Hernandez-Lara*, 10 F.4th at 27-28.

Under that test, a court must weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

A.    Private Interest.

As the government acknowledges, Sampiao has a significant private interest at stake. A person's interest in freedom from physical detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). For that reason, "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protections." *Addington v. Texas*, 441 U.S. 418, 425 (1979). Sampiao is, at present, deprived of this most basic freedom: he is being held at the Plymouth County Correctional Facility, a "secure facility for offenders being held or sentenced for crimes."[13] His confinement alongside individuals convicted of crimes, where he has neither been charged with nor convicted of any criminal offense, amplifies the burden effected by his ongoing detention. *See Hernandez-Lara*, 10 F.4th at 28 (finding that the first *Mathews* factor weighed heavily in the noncitizen's favor because he was "incarcerated alongside criminal inmates"). And Sampiao is experiencing all the deprivations that come with incarceration, including separation from his wife and newborn son, who was only one

---

[13]    Plymouth County Sheriff's Office, *Plymouth County Correctional Facility*, https://www.pcsdma.org/pccf.html [https://perma.cc/WU9P-3DU9].

week old when he was detained, and the inability to work to support his family. *See* ECF 24, at 5; ECF 26-1, at 5.

Sampiao also faces the prospect of a lengthy detention under the automatic stay regulation. That regulation became the basis for his detention on August 1, 2025, when ICE filed its notice of intent to appeal the Immigration Judge's bond order. *See* 8 C.F.R. §§ 1003.19(i)(2), 1003.6(c)(1). When ICE filed its notice of appeal on August 14, 2025, the next phase of detention under the regulation began, lasting ninety days, or until November 12, 2025, pending a BIA decision. *See id.* §§ 1003.19(i)(2), 1003.6(c)(4). But Sampiao's period of detention may last longer still, because the automatic stay regulation gives the government the power to unilaterally extend his detention. If the BIA does not resolve the appeal within the ninety-day period, ICE can seek a discretionary stay for an additional 30 days. *Id.* § 1003.6(c)(5). If the BIA authorizes a release, denies the discretionary stay, or fails to act, the stay is extended by five business days. *Id.* § 1003.6(d). Alternatively, if the Secretary of Homeland Security or another designated official refers the case to the Attorney General pursuant to 8 C.F.R. § 1003.1(h)(1), the stay is extended by fifteen business days. *Id.* Once such a referral is made, the Attorney General can extend the stay indefinitely by ordering a discretionary stay pending disposition of the case. *Id.* § 1003.6(d). Sampiao thus faces the possibility of a months- or years-long detention under the automatic stay regulation, notwithstanding his weighty interest in freedom from physical confinement. Accordingly, the first *Mathews* factor strongly favors Sampiao.

B.    <u>Risk of Error.</u>

The second *Mathews* factor concerns the risk of the erroneous deprivation of Sampiao's liberty interest by virtue of the automatic stay regulation's procedures, and the degree to which alternative procedures may ameliorate that risk. *See* 424 U.S. at 335. This factor, too, weighs

heavily in Sampiao's favor. The regulation's procedures are likely to erroneously deprive people in Sampiao's position of their liberty because only those noncitizens who have already demonstrated their entitlement to release from detention in court are subject to the regulation. *See Garcia Jimenez v. Kramer*, No. 25-cv-3162, 2025 WL 2374223, at *3 (D. Neb. Aug. 14, 2025). Following an adversarial hearing and individualized consideration of the evidence, such individuals have convinced a neutral adjudicator—the Immigration Judge—that they do not pose so great a risk of flight or risk to public safety to warrant ongoing detention. *See* 8 C.F.R. § 1003.19(a); ECF 26-1, at 2, 4-5 (describing the "documentary and testimonial" evidence presented by Sampiao and ICE in his custody redetermination hearing in Immigration Court). But the automatic stay regulation empowers ICE—the losing party in the bond hearing—to unilaterally override the decision of the Judge and keep the noncitizen detained pending appeal. Such a rule allows the government to bypass its burden of proof at bond hearings and usurp the role of the Immigration Judge. *See, e.g.*, *Günaydın v. Trump*, --- F. Supp. 3d ---, 2025 WL 1459154, at *8 (D. Minn. May 21, 2025); *Zavala v. Ridge*, 310 F. Supp. 2d 1071, 1078 (N.D. Cal. 2004) (automatic stay regulation "creates a potential for error because it conflates the functions of adjudicator and prosecutor"); *Ashley v. Ridge*, 288 F. Supp. 2d 662, 668, 671 (D.N.J. 2003) (automatic stay regulation produces a "patently unfair situation by 'tak[ing] the stay decision out of the hands of the judges altogether and giv[ing] it to the prosecutor who has by definition failed to persuade a judge in an adversary hearing that detention is justified'" and "renders the Immigration Judge's bail determination an empty gesture").

The government contends that the risk of erroneous deprivation of Sampiao's liberty is reduced because the automatic stay regulation requires a "senior legal official" at the Department of Homeland Security to certify that the appeal has evidentiary and legal support. 8 C.F.R.

§ 1003.6(c)(1)(ii). This certification is cold comfort to an individual in Sampiao's shoes. ICE is a component agency of DHS, and the certification by a senior DHS official aligned with the losing position advanced by ICE in Immigration Court provides scant assurance against an erroneous deprivation of liberty. The record in this case illustrates as much. ICE justifies its appeal to the BIA by asserting that Sampiao is an applicant for admission under Section 1225(b)(2)(A), but it fails entirely to engage with the holding of the Immigration Judge—and holdings by courts across the country—that Sampiao and similarly situated people are subject to Section 1226(a)'s discretionary detention framework, not Section 1225(b). *See, e.g.*, *Doe v. Moniz*, No. 25-cv-12094-IT, 2025 WL 2576819, at *4-5 (D. Mass. Sept. 5, 2025); ECF 16, *Encarnacion v. Moniz*, No. 25-cv-12237-LTS, at 5-6 (D. Mass. Sept. 5, 2025); *Sicha v. Bernal*, No. 25-cv-00418-SDN, 2025 WL 2494530, at *7 (D. Me. Aug. 29, 2025); *Lopez-Campos v. Raycraft*,, --- F. Supp. 3d ---, 2025 WL 2496379, at *5-8 (E.D. Mich. Aug. 29, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-cv-06248-BLF, 2025 WL 2419263, at *3-4 (N.D. Cal. Aug. 21, 2025); *Romero v. Hyde*, --- F. Supp. 3d ---, 2025 WL 2403827, at *1 (D. Mass. Aug. 19, 2025); *Maldonado v. Olsen*, --- F. Supp. 3d ---, 2025 WL 2374411, at *11-13 (D. Minn. Aug. 15, 2025); *dos Santos*, 2025 WL 2370988, at *6-8; *Lopez Benitez v. Francis*, --- F. Supp. 3d ---, 2025 WL 2371588, at *3-9 (S.D.N.Y. Aug. 13, 2025); *Rosado v. Bondi*, No. 25-cv-02157, 2025 WL 2337099, at *6-11 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted*, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Martinez v. Hyde*, --- F. Supp. 3d ---, 2025 WL 2084238, at *2-8 (D. Mass. July 24, 2025); *Gomes*, 2025 WL 1869299, at *5-8; *Rodriguez*, 779 F. Supp. 3d at 1255-61. Indeed, the government does not cite a single case that has engaged with this issue and concluded otherwise.

The automatic stay regulation also inverts the traditional burdens and standards governing requests for stays pending appeal. In federal court, the party seeking a stay of a trial court order

bears the burden of demonstrating that a stay is warranted under the circumstances of the case. *See Nken v. Holder*, 556 U.S. 418, 433-34 (2009). Under the automatic stay regulation, the party seeking a stay of the Immigration Judge's bond order—i.e., the government—shoulders no burden at all because it can obtain a stay automatically. To meet its burden in federal court, the party seeking a stay of a trial court order must, among other things, make "a strong showing" that they are likely to succeed on the merits of their appeal and likely to be irreparably injured without a stay. *Id.* at 434 (quotation marks omitted). The automatic stay regulation, in contrast, does not require ICE to demonstrate any likelihood of success on the merits of its appeal to the BIA or any risk of irreparable injury. The regulation simply gives the losing party a stay as of right—a far cry from the typical rule that a "'stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right.'" *New Jersey v. Trump*, 131 F.4th 27, 34 (1st Cir. 2025) (quoting *Nken*, 556 U.S. at 427). By flipping the traditional rules governing requests to stay pending appeal, the automatic stay regulation invites significant risk of error in decisions that deprive individuals of their liberty. *See Günaydın*, 2025 WL 1459154, at *9.

That risk of error could, of course, be lessened if ICE were held to the same standard as a party seeking a stay pending appeal in federal court. It could also be lessened if the government adopted the process set forth in a neighboring provision, 8 C.F.R. § 1003.19(i)(1). That regulation empowers the BIA to grant a request by the government to stay an Immigration Judge's decision on custody conditions, but the stay is discretionary, not automatic, 8 C.F.R. § 1003.19(i)(1), and it requires the BIA to review "the individual circumstances and merits of the case," *Günaydın*, 2025 WL 1459154, at *9. Other courts have concluded, and this Court agrees, that this "procedure mitigates the concern about DHS usurping the neutral adjudicatory role and provides additional safeguards that the automatic stay provision lacks." *Garcia Jimenez*, 2025 WL 2374223, at *4; *see*

*also Günaydın*, 2025 WL 1459154, at *9; *Zavala*, 310 F. Supp. 2d at 1077; *Bezmen v. Ashcroft*, 245 F. Supp. 2d 446, 451 (D. Conn. 2003).

      C.    <u>Government Interest.</u>

      The final *Mathews* factor concerns the government's interest in the procedure it has adopted, as well as any administrative or financial burdens associated with alternative procedures. *See* 424 U.S. at 335. The government contends that the automatic stay regulation advances its interest in "'maintain[ing] the status quo in those cases where it chooses to seek an expedited review of the [Immigration Judge's] custody order by the BIA.'" ECF 22, at 6 (quoting *Hussain v. Gonzalez*, 492 F. Supp. 2d 1024, 1031 (E.D. Wisc. 2017)). This is just another way of restating a key flaw of the automatic stay regulation: it empowers the government to continue detaining someone who has convinced a neutral adjudicator, following a hearing and assessment of the evidence, that his ongoing detention is not warranted. The government does not say *why* it has an interest in maintaining the status quo in such cases, nor does it argue that Sampiao and others subject to the automatic stay regulation are an undue flight risk or danger to public safety. The government does, indeed, have a legitimate interest in ensuring noncitizens' appearance at removal proceedings and preventing harms to the community, *see Hernandez-Lara*, 10 F.4th at 32-33, but noncitizens subject to the automatic stay regulation have been deemed, subject to a bond order, to *not* pose such risks. The government makes no further argument that implementing the Immigration Judge's bond order pending BIA review would impose administrative or financial costs. To the contrary: the automatic stay regulation appears to impose more costs on the government, because it requires the government to continue funding and overseeing Sampiao's detention, rather than releasing him on bond per the Judge's order.

Under the circumstances, the government interest advanced by the automatic stay regulation does not appear weighty, especially when measured against Sampiao's strong interest in freedom from physical confinement and the risk of error in depriving him of that freedom. *See id.* at 28 ("'In our society liberty is the norm.'" (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987))). And the public interest likewise favors Sampiao's challenge to the regulation. "[U]nncessary detention," the First Circuit has cautioned, "imposes substantial societal costs," as it "'separates families and removes from the community breadwinners, caregivers, parents, siblings and employees.'" *Id.* at 33 (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 855 (2d Cir. 2020)). Sampiao has experienced these hardships. He has no criminal record and has complied with the conditions of his 2021 Order of Recognizance. Nevertheless, he was arrested and has been held in detention for nearly two months. In that time, he has missed nearly all of his young son's life, and he has been separated from his wife and broader community. The "ruptures in the fabric of communal life" wrought by unnecessary detention, though "difficult to capture in dollars and cents," likewise support Sampiao's challenge to the automatic stay regulation. *Id.*

The balance of the *Mathews* factors favors Sampiao. Accordingly, his detention pursuant to the automatic stay regulation violates his procedural due process rights under the Fifth Amendment, and he is entitled to immediate release. Having so concluded, the Court need not also consider Sampiao's substantive due process and *ultra vires* challenges to the regulation.

## CONCLUSIONS AND ORDERS

For the foregoing reasons, Sampiao's petition for a writ of habeas corpus under 28 U.S.C. § 2241, ECF 1, is GRANTED. The respondents are ORDERED to release Sampiao from the custody of U.S. Immigration and Customs Enforcement immediately upon his posting of the ordered bond, with no additional conditions beyond those imposed by the Immigration Judge in

26

the July 31, 2025 bond order. ECF 14-1, at 1. The respondents are further ORDERED to file a status report on or before September 12, 2025, confirming that Sampiao has been released from custody.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: September 9, 2025